IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPECTRUM SCIENCES AND SOFTWARE INC., Plaintiff, | ) | |
| v. | ) | No. 04-1366C (Judge Allegra) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(d)(1) of the Rules of this Court, defendant submits the following proposed findings of uncontroverted facts in support of its motion to dismiss and for summary judgment. the

1. On October 17, 2000, the Department of the Air Force ("Air Force") and Spectrum Sciences and Software, Inc. ("Spectrum") entered into a Cooperative Research and Development Agreement ("CRADA"), consisting of a research and development project to demonstrate possible improvements to the Munitions Assembly Conveyor ("MAC"). App. 1-18.[1]

2. The MAC is an existing Government inventory item that has been utilized in the final assembly of munitions by Air Force personnel at bases around the world for several decades. See App. 58.

[1] "App. ___" refers to the appendix attached to our motion to dismiss and for summary judgment, filed concurrently with this statement of uncontroverted facts.

3. The MAC and its components are manufactured for the Air Force by several firms, including Spectrum; the Government possesses a license to use the designs and drawings for the MAC. App. 61; 161-70.

4. Appendix A of the CRADA, entitled "Work Plan for Improving Munitions Support Equipment," listed a number of areas in which the existing MAC design was deficient and tasked the parties to cooperate in demonstrating improvements in those areas. App. 12-13.

5. Paragraph 5.1.1 of the CRADA, Appendix A, stated that Spectrum claimed intellectual property rights to its "existing product line, and design work completed on the laboratory RAMS . . . ."[2] App. 14.

6. Paragraph 2.9 of the CRADA defined proprietary information as "information which embodies trade secrets or which is confidential technical, business or financial information **provided that such information is not generally known, or is not available from other sources without obligations concerning its confidentiality** . . . ." App. 2 (emphasis added).

7. In accordance with the CRADA, Spectrum submitted a status report dated October 1, 2001 and a Final Report dated August 15, 2002 to the Air Force. App. 19-21; 22-25. These

---

[2] Spectrum installed a Rapid Assembly of Munitions System ("RAMS") laboratory demonstration area within its facility. App. 11.

reports outlined Spectrum's progress in demonstrating improvements to the MAC. Id.

8. The CRADA did not require, and Spectrum did not submit, drawings or designs for the purported improvements to the Air Force. See App. 1-18.

9. Subsequent to the CRADA, on February 19, 2003, Spectrum submitted an unsolicited proposal to sell the Air Force an improved version of the MAC, a product that Spectrum called the Combat Munitions Assembly Conveyor ("CMAC"). See App. 26. According to Spectrum, the CMAC would incorporate improvements that were purportedly developed under the CRADA. Id.

10. On March 25, 2003, Air Force contracting officer Karen Turner rejected the unsolicited proposal upon the grounds that there was a pre-existing acquisition under way to satisfy the Air Force's requirement for an improved MAC. App. 27.

11. Shortly thereafter, the Air Force conducted a competitive procurement to develop and produce the MAC II, an improved version of the MAC.

12. On April 1, 2003, the Air Force released the draft Request for Proposal ("RFP") for the MAC II, RFP No. F08635-03-R-0077. See App. 28-54 (pages from the performance specification for the draft proposal).

13. Two weeks later, on April 16, 2003, the Air Force held a "MAC II Industry Day" at Eglin Air Force Base, Florida. See App. 55-111. The purpose of Industry Day was to discuss the draft RFP and to "help [the Air Force] refine [its] RFP as far as descriptions, cost variances, technical and production 14. issues, etc." App. 57.

14. The participants at Industry Day, consisting of Air Force officials and 22 individuals from private industry, were shown a fully-assembled MAC, some munitions, and the compressor that was used with the MAC. App. 57-58.

15. The participants at Industry Day were encouraged to closely inspect the MAC, and to ask detailed, technical questions about the MAC and its capabilities, deficiencies, and proposed improvements, as well as to take pictures of it. App. 57-61.

16. At Industry Day, Mark Hillman, the Air Force's lead engineer for the procurement, "explained how the [G]overnment bought drawings and technical data for the old [MAC] and had to use multiple companies/manufacturers for parts." App. 61. He also explained how "the designs proposed should be based on what [was] written within the [RFP's] Performance Spec[ification]." He "[r]eminded everyone that the purpose of their company [was] to meet [the Government's] performance spec[ification] . . . ." Id.

17. Spectrum president Dwight Howard, along with Spectrum officials Pat Carpenter, Randy Henning, and Danny Bridges attended Industry Day, as did Tom Turner upon behalf of Weapon Systems Design & Manufacturing ("Weapon Systems"). App. 55-56.

18. Spectrum did not object to the display of the fully-assembled MAC or its related equipment at Industry Day and did not express concern to the Air Force that it believed that the MAC and related equipment shown to the attendees consisted of Spectrum's proprietary information. See App. 55-111.

19. On May 1, 2003, the final Request for Proposal for the MAC II was electronically published by the Air Force. See App. 112-33 (pages from the RFP's Performance Specification).

20. Approximately two weeks later, on May 13, 2003, Tom Turner, a former Air Force employee and currently an employee of Weapon Systems, visited Beale Air Force Base in California in an effort to gather information for Weapons System's proposal design. App. 147-50 (Declaration of Tom Turner); 151-53; 154-60.

21. During his visit, Mr. Turner was allowed to see a partially-assembled MAC that was used for training purposes. App. 149. The MAC shown to Mr. Turner was indistinguishable from the MAC that he saw at Industry Day a month earlier. App. 149 (Turner Decl. ¶ 6).

22. Mr. Turner was allowed to ask technical questions about the MAC, and discussed the MAC and its capabilities with Air Force personnel. App. 149-50; 151-53; 154-60.

23. Mr. Turner did not see or learn about any designs or drawings concerning the MAC or its related equipment. Id.

24. On or about August 15, 2003, the Air Force announced that D&D Machinery and Sales, Inc. ("D&D") was the apparent successful offeror in the MAC II competition. App. 134.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director

s/ Lauren S. Moore

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

Attorneys for Defendant

OF COUNSEL:

CHUN-I CHANG
ALAN LUTHY
Department of the Air Force

MAY 31, 2005

**CERTIFICATE OF FILING**

I hereby certify that on the 31st day of May, 2005, a copy of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore