IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPECTRUM SCIENCES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-1366C |
| | ) | (Judge Francis M. Allegra) |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff SPECTRUM SCIENCES AND SOFTWARE, INC., by and through its undersigned attorney, pursuant to Rules 12(b)(6) and (56) of the Rules of the United States Court of Federal Claims, and submits this Opposition to Defendant's Motion to Dismiss and Motion for Summary Judgment. In support, Plaintiff relies upon the following Opposition Brief, Appendix and the pleadings previously submitted.

I. STATEMENT OF THE ISSUES

1. Motion for Summary Judgment. Defendant's Motion for Summary Judgment relies solely on contesting Plaintiff's factual allegations that the Defendants divulged Spectrum's proprietary information. Spectrum alleges in its Amended Complaint that the Defendant divulged Spectum's proprietary information in two separate ways, either of which, if proved, would fulfill the element contained in each of the three counts of Plaintiff's Amended Complaint that the Defendant is contesting in its Motion for Summary Judgment. The two ways that Spectrum alleges that Defendant divulged Spectrum's proprietary information can be summarized as follows:

(1) Through the draft RFP or, in the alternative, in the final RFP for the Munitions Assembly Conveyor II ("MAC") solicitation number ("MAC II Solicitation"); and

(2) When either Senior Master Sergeant Tom Turner ("Turner") or Senior Master Sergeant Dan Mank ("Mank") divulged Spectrum's proprietary information, to Spectrum's competitors when they utilitized Spectrum's proprietary information obtained while on active duty with the United States Air Force to assist such competitors in preparing Technical Proposals for the MAC II Solicitation.

Section 1 of Defendant's Statement of the Issues adequately identifies the first way in which Spectrum alleges Defendant divulged its proprietary information. However, Section 2 of Defendant's Statement of the Issues is too narrowly identified, as Plaintiff's Amended Complaint alleges that Turner acquired proprietary information from Spectrum on a number of occasions in addition to viewing Spectrum's partially-assembled MAC at Beale AFB that is the focus of Defendant's Motion for Summary Judgment. The correct statement of the issue relating to Turner and Mank is whether either Turner or Mank acquired Spectrum's proprietary information during their employment with the USAF and later used such proprietary information to assist Spectrum's competitors in preparing Technical Proposals for the MAC II Solicitation. It should also be noted that neither the Defendants' Motion for Summary Judgment nor the Defendant's Brief addresses Plaintiff's allegations relating to Mank. Considering that Defendant did not contest in any manner the allegations made by Plaintiff in ¶¶ 22, 25, 31-35, 44 and 59 of its Amended Complaint as it relates to the allegations that Mank acquired, and subsequently divulged, Plaintiff's proprietary information, the Defendant's Motion for Summary Judgment should be denied on that basis alone.

2. Motion to Dismiss. Defendant's Motion to Dismiss attempts to argue that Plaintiff's reference in ¶¶ 33 and 34 of its Amended Complaint to 18 U.S.C. § 1905 and 207(a) and 5 C.F.R. Part 2637 should cause Plaintiff's Amended Complaint to be dismissed as to any allegations that Turner and Mank improperly divulged Plaintiff's proprietary information because those federal statutes and regulations do not provide for a private cause of action against the United States. Defendant further argues that Plaintiff's references to these federal statutes and regulations in its Amended Complaint defeat all of the other underlying causes of action as a matter of law. Plaintiff will explain in its Opposition Brief that these federal statutes and regulations are not essential to the three counts contained in its Amended Complaint (breach of contract, breach of implied-in-fact contract, and misappropriation of trade secrets), and, therefore, is entirely irrelevant whether a private cause of action arises from these federal statutes and regulations. Furthermore, even if the Court were to dismiss the allegations as they relate to Turner and Mank, as requested by the Defendant, the remainder of the Plaintiff's factual allegations would suffice to state a cause of action for which relief can be granted on all three counts contained in Plaintiff's Amended Complaint.

## II. PLAINTIFF'S STATEMENT OF FACTS

1. Prior to Spectrum and the United States Air Force ("USAF") entering into the Cooperative Research and Development Agreement ("CRADA") on October 17, 2000, Spectrum engaged in substantial research and development on improvements to the munitions assembly conveyor ("MAC") as a result of the experience and expertise of several of Spectrum's employees who had worked with the MAC for many years while serving in the USAF. Plaint. App. 2.

2. Specifically, Spectrum, through its employees, researched and developed a number of significant improvements to the MAC over a period of months prior to entering into the CRADA with the USAF. Spectrum's research and development of improvements to the MAC were a result of deficiencies known to Spectrum's research and development team through their use of the MAC in the field with the USAF, as well as their understanding of the need for improvements to the MAC resulting from the increased weight of USAF munitions in recent years. Plaint. App. 2.

3. Spectrum expended approximately $500,000.00 in its pre-CRADA research and development. Spectrum's pre-CRADA efforts led it to create an in-house laboratory for MAC research and development. Spectrum also manufactured a pre-CRADA prototype of the improved MAC. Plaint. App. 2.

4. Spectrum's Amended Complaint against the USAF deals only with the improvements to the MAC which were researched and developed prior to entering the CRADA on October 17, 2000, or developed after the CRADA but prior to submitting the Unsolicited Proposal[1] referenced in the Amended Complaint ("improvements to the 'MAC"). Defendant's Motion to Dismiss is somewhat confusing in that it does not always differentiate between the original MAC and the improvements to the MAC that are proprietary to Spectrum and are the subject of this action. Spectrum makes absolutely no claim on any of the designs to the original MAC.

5. Following Spectrum's research and development efforts, which resulted in the manufacture of a prototype MAC containing a number of improvements, Spectrum invited the USAF to view these improvements to the MAC and determine the USAF's interest in Spectrum's improvements. The USAF officials inspected the MAC manufactured by Spectrum

[1] See Plaintiff's Appendix B.

which contained Spectrum's improvements, and were extremely interested in how the USAF could acquire such technology. Prior to this visit, the U.S. government had no involvement in any way with the research and development on the improvements to the MAC which was contained in Spectrum's improved MAC prototype. Plaint. App. 2.

6. As a result of the USAF officials' inspection of the improved MAC prototype manufactured by Spectrum and housed at its laboratory, the USAF and Spectrum negotiated and entered into the CRADA for the purpose of testing and integrating Spectrum's improvements to the MAC. Plaint. App. 2.

7. Paragraph 5.1.1 of Appendix A to the CRADA identified the proprietary information developed and owned by Spectrum prior to entering into the CRADA. Def. App. 14

8. The Defendant apparently does not contest the proprietary nature of Spectrum's improvements to the MAC in its Motion for Summary Judgment, but rather focuses its Motion for Summary Judgment arguments solely on contesting whether Spectrum's proprietary information was divulged by the Defendant either through the draft or final RFP, or through its former employee Turner. Defendant's Motion for Summary Judgment.

9. During the performance of the CRADA, and as a part of the requirements contained therein, Spectrum delivered to the USAF at Beale Air Force Base a number of the individual components of the improved MAC that were developed and manufactured by Spectrum prior to entering into the CRADA. These components contained the improvements developed by Spectrum ("improved MAC components"). The purpose for delivering these improved MAC components to Beale AFB was to allow the USAF to test such improved MAC components pursuant to the CRADA. These improved MAC components Spectrum delivered to Beale AFB were the components that Spectrum contends were viewed by Turner on his visit to

Beale AFB, as referenced in his Declaration and the Defendant's Motion for Summary Judgment Brief. Plaint. App. 2-3.

10. During the performance of the CRADA, Spectrum worked closely with a number of USAF personnel to explain and test Spectrum's improvements to the MAC and to integrate these improvements into the MAC. Such interactions with USAF personnel did include Spectrum providing the USAF with substantial amounts of specific design information and test results for Spectrum's improvements to the MAC over the almost two year period of the performance of the CRADA. Examples of specific design information provided to the USAF include:

(a) electric hoist design;

(b) lighting design;

(c) gantry design;

(d) dolly stop design;

(e) torque bar design; and

(f) compressed air source design.

Plaint. App. 3.

11. The Defendant's contention that no design information or drawings were provided to the Defendant by Spectrum is patently false. During the performance under the CRADA, five of the improvements to the MAC developed by Spectrum prior to entering into the CRADA, including specific designs for such improvements, were submitted and accepted by the USAF as Spectrum's proprietary items and are currently being sold to and are being utilized by the USAF for use with the MAC currently in the USAF inventory. These items, accepted as proprietary to

Spectrum, include the pneumatic hoist, lights, dolly stop, MAC containers, and MAC container legs. Plaint. App. 3-4.

12. The Defendant's Motion for Summary Judgment Brief also contends that Turner had "no involvement" with the improvements to the MAC developed by Spectrum and tested by the USAF during the performance of the CRADA. This position is also patently false. Although Spectrum is not yet aware of Turner's full involvement in the review of the improvements to Spectrum's MAC during the performance of the CRADA, Spectrum is aware that Turner visited the Spectrum laboratory and viewed the improved MAC on at least three occasions during the performance of the CRADA. During one of those visits, while Turner was still on active duty with the USAF, Spectrum personnel provided Turner with a three hour "top-to-bottom" review and explanation of all of the improvements to the MAC developed and manufactured by Spectrum prior to the CRADA. This review and detailed explanation of the improvements to the MAC contained in the prototype in Spectrum's laboratory was provided to Turner in his official capacity with the USAF 46th Test Wing at Eglin AFB. Plaint. App. 4.

13. Following submission of the final report on the CRADA on August 15, 2002, Spectrum was invited to submit an Unsolicited Proposal that would encompass all the improvements to the MAC developed by Spectrum. Thereafter, on or about February 19, 2003, Spectrum did submit an Unsolicited Proposal to sell the USAF a new MAC that would include all Spectrum's improvements to the MAC. In addition to all the improvements to the MAC Spectrum developed, and made prior to entering into the CRADA, this Unsolicited Proposal also included several additional improvements, including a tool tray add-on that was not on the then-current MAC nor on the improvements to the MAC developed by Spectrum prior to the CRADA. On or about March 25, 2003, USAF Contracting Officer Karen Turner rejected

Spectrum's Unsolicited Proposal due to the fact that an acquisition program was underway to acquire an improved MAC. Def. App. 27. This was the first time that Spectrum became aware that the USAF was planning to conduct a competitive procurement to produce an improved version of the MAC, referred to as the MAC II. Plaint. App. 4-5. Def. App. 26.

14. On April 1, 2003, the USAF released the draft Request for Proposal for the MAC II, RFP No. F08635-03-R-0077 ("Draft RFP"). Def. App. 28-54.

15. Following receipt and review of the Draft RFP for the MAC II, Spectrum complained to USAF officials that the Draft RFP contained elements of Spectrum's proprietary information protected under the CRADA and under the Unsolicited Proposal. The elements of the Draft RFP to which Spectrum was objecting referenced certain elements of the improvements to the MAC developed by Spectrum. Plaint. App. 5. As a result of Spectrum's objections and the USAF's review of the Draft RFP, certain provisions of the Draft RFP specifications were altered to remove some of the proprietary information relating to Spectrum's improvements to the MAC. However, both the Draft RFP and final RFP for the MAC II Solicitation contained references to specific performance criteria and design elements of Spectrum's improvements to the MAC. These include, but are not limited to, the following:

(a) electrical receptacles in the Interface Control Board (Spec. Section 3.2.1.6);

(b) compressed air source design (Spec. Section 3.1.2.e);

(c) electric hoist requirement (Spec. Section 3.1.2.1);

(d) gantry load limit (Spec. Section 3.2.1.1);

(e) new lighting system configuration (Spec. Section 3.2.1.5); and

(f) idea and dimensions for the tool tray accessory (Spec. Section 3.2.1.9).

Def. App. 28-54, 112-133.

16. Thereafter, on May 1, 2003,the final Request for Proposal for the MAC II was electronically published by the USAF ("Final RFP"). Def. App. 112-133.

17. Similarly, Defendant's contention that Turner did not view Spectrum's improved MAC components at Beale AFB is incorrect. Spectrum became aware of Turner's inspection of Spectrum's improved MAC prototype components when Spectrum personnel received a call from Senior Master Sergeant Potratz at Beale AFB. SMSgt. Potratz informed Spectrum personnel that Turner was requesting to see such components and that Beale AFB personnel were being directed by Eglin AFB to provide Turner such access to Spectrum's improvements to the MAC prototypes. Although Spectrum protested and requested that Turner be denied access, USAF personnel at Beale AFB permitted Turner to make an in-depth review of Spectrum's proprietary improved MAC components. Turner's Declaration contained in Defendant's brief specifically confirms that he inspected these components "thoroughly," although he claims that he did not know who manufactured the components. Def. App. 149. Plaint. App. 6.

18. Mank served as the lead USAF agency responsible for the CRADA during significant portions of the testing and verified the improvements to the CRADA pursuant to the CRADA. In such capacity, Mank had continuous and repeated access to Spectrum's design and improvements to the MAC. Following Mank's retirement from the USAF, Mank participated in the Industry Day for the MAC II Solicitation as a representative of a private contractor or contractors participating in the MAC II Solicitation. Plaint. App. 6-7.

## III. <u>ARGUMENT</u>

1. Defendant's Motion for Summary Judgment should be Denied.

A. *Summary Judgment Standards to be Applied.*

RCFC 56(c) permits this Court to render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "A fact is 'material' if it has the 'potential to affect the outcome of the suit under the applicable law.'" United States v. President and Fellows of Harvard College, 323 F.Supp. 2d 151, 163 (D. Mass. 2004), quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). "A 'genuine' issue is one supported by such evidence that 'a "reasonable jury drawing favorable inferences", could resolve it in favor of the nonmoving party.'" Harvard College, 323 F. Supp. 2d at 163, quoting Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999), quoting Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 427 (1st Cir. 1996).

In bringing a motion for summary judgment, "[t]he initial burden [is] on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact." Orlosky Inc. v. United States, 64 Fed. Cl. 63, 68 (Fed. Cl. 2005), citing Crown Operations Int'l, Ltd. v. Solutia Inc., 289 F.3d 1367, 1375 (Fed. Cir. 2002). As the United States Supreme Court set out in Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), "a party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." While the movant's burden "may be discharged if the movant can demonstrate 'an absence of evidence to support the nonmoving

party's case[,]'", Orlosky, Inc., 64 Fed. Cl. at 68, citing Celotex, 477 U.S. at 325 (1986), "[i]n evaluating the motion, the Court must view the facts 'in the light most favorable to the party opposing the motion.'" Consumers Energy Co. v. United States, ___ Fed. Cl. ___, 2005 WL 1023513 at *4 (Fed. Cl. April 29, 2005), citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs." Orlosky, Inc., 62 Fed. Cl. at 68, citing Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) and Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004). Moreover, "[i]n ruling on a motion for summary judgment, a court does not weigh the evidence to determine the truth of the matter, but rather assesses whether there is a genuine issue for trial." Ruttenburg v. United States, ___ Fed. Cl. ____, 2005 WL 757172 at *4 (Fed. Cl. March 25, 2005), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) and Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002).

If the moving party first meets its burden, then and only then does the burden shift to the nonmoving party to "show[] sufficient evidence of a material fact in dispute that would allow a fact finder to decide the case in its favor." Ruttenburg, 2005 WL 757172 at *5, citing Liberty Lobby, Inc., 477 U.S. at 256. This burden has also been stated as the duty to "point to specific facts demonstrating that there is, indeed, a trialworthy issue." Harvard College, 323 F. Supp. 2d at 162 (citation omitted). The nonmoving party need not demonstrate that it would prevail at trial, but only that there is a genuine issue in dispute for resolution by the trial court. "Summary judgment … will not be granted if 'the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Orlosky Inc., 64 Fed. Cl. at 68, citing Liberty Lobby, Inc., 477 U.S. at 248; see also Harvard

College, 323 F. Supp. 2d at 162. Moreover, where "the moving parties' submissions [do] not foreclose[] the possibility of the existence of certain facts from which 'it would be open to a jury … to infer from the circumstances'" that a material fact exists, summary judgment is inappropriate. Liberty Lobby, Inc., 477 U .S. at 249 (1986), quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

As detailed below, the United States, as movant in the Motion for Summary Judgment, has failed to meet its initial burden of showing an absence of issues of material fact. First, the Defendant did not address in any manner Plaintiff's Allegations in the Amended Complaint that Mank obtained and improperly divulged Spectrum's proprietary information (Amended Complaint, ¶¶ 22, 25, 31-35, 44 and 59). Second, even if the Court believes that the movant's initial burden has been satisfied, Spectrum has met its burden of showing that genuine issues of material fact exist for resolution at trial as to whether the Draft RFP or the Final RFP for the MAC II Solicitation divulged Spectrum's proprietary information, and that Turner obtained Spectrum's proprietary information and divulged such information to support a competitor's offering to the MAC II Solicitation. The Defendant's Motion for Summary Judgment does not address any other points. Thus, the movant's Motion for Summary Judgment should be denied.

B. *The Draft and Final Request for Proposals Divulged Spectrum's Proprietary Information*.

The Defendant's argument that there is no genuine issue of material fact relating to whether the USAF divulged Spectrum's proprietary information relies on the erroneous and highly contested proposition that "because Spectrum did not submit designs or drawings relating to the MAC to the Air Force, the draft and final RFP's did not divulge proprietary information belonging to the Spectrum". Defendant's Motion at p. 19 (emphasis added). In reality, during

the performance of the CRADA, Spectrum worked closely with a number of USAF personnel to explain and test Spectrum's improvements to the MAC and to integrate these improvements into the MAC. Such interactions with USAF personnel included Spectrum providing the USAF with substantial amounts of specific design information and test results for its improvements to the MAC over the almost two year period of the performance of the CRADA. Examples of specific design information provided to the USAF include: (a) pneumatic hoist design; (b) electric hoist design; (c) lighting design; (d) gantry design; (e) dolly stop design; (f) torque bar design; and (g) compressed air source design. Furthermore, during the performance of the CRADA, five of the improvements to the MAC developed by Spectrum prior to entering into the CRADA, including specific designs for such improvements, were submitted and accepted by the USAF as Spectrum proprietary items and are currently being sold to and utilized by the USAF for use on with the MAC currently in the USAF inventory. These items, accepted as proprietary to Spectrum, include the pneumatic hoist, lights, dolly stop, MAC containers, and MAC container legs. Plaint. App. 3-4. These facts not only show that the Defendant's position is mistaken, but for the purposes of this Opposition to Defendant's Motion for Summary Judgment relating to the divulging of Spectrum's proprietary information through the Draft and Final RFPs for the MAC II Solicitation, clearly establish a genuine issue of a material fact.

On a related matter raised by the Defendant's Motion for Summary Judgment, that the Draft and Final RFPs for the MAC II Solicitation "specification were performance, rather than design, specifications," the Defendant is also clearly mistaken. Defendant's Motion at p. 19. In Blake Construction Company, Inc. v. United States, 987 F. 2d 743, 746 (Fed. Cir. 1993), the Federal Circuit explained the distinction and interaction between design and performance specifications:

> More generally, the problem with both [] arguments is that the distinction between design and performance specifications is not absolute …. Contracts may have both design and performance characteristics. *See, e.g.,* Utility Contractors, Inc. v. United States, 8 Cl.Ct. 42, 50 n. 7 (1985) ("Certainly one can find numerous government contracts exhibiting both performance and design specifications."), *aff'd mem.,* 790 F.2d 90 (Fed.Cir.1986); Aleutain Constructors v. United States, 24 Cl.Ct. 372, 379 (1991) ("Government contracts not uncommonly contain both design and performance specifications.").

Although it is clear (as shown below) that the MAC II specifications contain "both design and performance characteristics," the distinction itself is ultimately of little value in determining whether the Defendant improperly divulged Spectrum's proprietary information. This distinction created by the Defendant's Motion for Summary Judgment is based on another erroneous interpretation of ¶ 5.1.1 of Appendix A to the CRADA, which identifies the specific intellectual property rights to the improvements to the MAC claimed by Spectrum which the USAF agreed to protect in the CRADA. The entire ¶ 5.1.1 reads as follows:

> Spectrum has supported the development of a product line of munitions handling equipment prior to this AGREEMENT and specifically claims intellectual property rights particularly as related to their existing product line, and design work completed on the laboratory RAMS which includes modification of the gantry to 6,000 lbs. load limit, the system on the rail conveyor, the interface control board to make it electrical/pneumatic, modification to the rail conveyor for torque of GBU's, the development of a 5,500 lb. electric hoist with powered trolley, new lighting system, and development of a working table with modification of container lids. WMOM will protect Spectrum's proprietary rights in accordance with Article 7 of this AGREEMENT. (emphasis added) Def. App. 14.

The wording of this paragraph does not limit the intellectual property rights claimed by Spectrum to the "design work completed on the laboratory RAMS"[2] but to Spectrum's "existing

[2] It should be noted that the terms Munitions Assembly Conveyor ("MAC"), the Rapid Assembly of Munitions System ("RAMS"), and the Combat Munitions Assembly Conveyor ("CMAC") all refer to the same basic piece of equipment which have been labeled with different names over the course of its development. Plaintiff's Response to Proposed Findings shall refer to the current iteration of the MAC as "the Current MAC", and improvements made to the current MAC by Spectrum as "improvements to the MAC."

product line", which would include both ideas and concepts as well as specific design work on the improvements to the MAC, both of which are proprietary information. Research, Analysis,& Development, Inc. v. United States, 8 Cl.Ct. 54,61 (Ct.Cl. 1985). The real question is whether the information imbedded in either the Draft RFP or the Final RFP for the MAC II Solicitation contained Spectrum's proprietary information protected under the CRADA and/or under the implied in fact contract created when the USAF accepted Spectrum's Unsolicited Proposal that would liability on the part of the USAF. Research, Analysis,& Development, Inc. v. United States, 8 Cl.Ct. 54,61 (Ct.Cl. 1985). Although Spectrum questions whether a Motion for Summary Judgment can even address this question with the limited amount of factual information contained in the Defendant's Motion for Summary Judgment and Spectrum's Opposition to such Motion for Summary Judgment and the lack of any discovery in this lawsuit at this stage in the proceedings, Spectrum does believe that the information contained below at a minimum raises a genuine issue of material fact as to whether the information imbedded in either the draft RFP or the final RFP for the MAC II Solicitation contains proprietary information under the CRADA and/or the implied in fact contract created when the USAF accepted Spectrum's Unsolicited Proposal.

(1) *Specific Examples of Spectrum's Proprietary Information Divulged in Draft RFP and Final RFP in Breach of the CRADA*.

Specific examples of Spectrum's proprietary information developed prior to the CRADA that were identified in ¶ 5.1.1 of Appendix A of the CRADA and were divulged in either or both the draft RFP or the final RFP for the MAC II Solicitation are as follows:

(a) The draft RFP specification section 3.2.1.1 states in part that "The performance of the primary hoist shall be equivalent or greater that a HL3000K hoist. The MAC II shall

have an option for an electric hoist that shall meet or exceed the capabilities of a HL 3000K". First, this specification clearly has design characteristics in that it is identifying a specific electric hoist (a main component of the MAC) around which the bidder must design. The original MAC did not have any electric hoist, only a pneumatic hoist. Spectrum researched the need pre-CRADA and identified not only an electric hoist, but more specifically the HL3000K electric hoist, to the Defendant. This specific hoist is the "5500 lb electric hoist" referenced in ¶ 5.1.1 of Appendix A of the CRADA as proprietary to Spectrum. Further, it is worth noting that upon strenuous objection by Spectrum to the electric hoists inclusion in the draft RFP, this reference was removed in the final RFP specification section 3.2.1.1 which ultimately read in relevant part as follows: "The MAC II shall operate more efficiency (speed and/or weight capacity) that the current MAC . . . [a]ll movements during lifting shall be powered." All references to a specific hoist in particular, or even an electric hoist in general, were removed in the Final RFP. Therefore, it is clear that the Defendant recognized that the publication of the Draft RFP for the MAC II Solicitation divulged this critical improvement to the MAC. Def. App. 14, 38-39, 122. Plaint. App. A 5-6.

(b) The Draft RFP specification section 3.2.1.1 also states in part that "[t]he MAC loading and unloading system shall have a working strength of 6,000 lbs." This "6,000 lb. load limit" is clearly a design characteristic and a critical feature of an improved MAC. The 6,000 lb. load limit was specifically referenced in ¶ 5.1.1 of Appendix A of the CRADA as proprietary to Spectrum. After Spectrum's protests, this load limit was necessary to handle the newer munitions developed by the USAF in recent years. Similarly, reference was removed in the final RFP which read in relevant part "[t]he

MAC II shall be capable of simultaneously loading and unloading bomb bodies and fully assembled munitions listed in Table 3.1.2.a. from and onto trailers listed in Table 3.1.2.b..” All reference to the specific 6,000 lb. load limit was removed. This change provides another example of a critical design feature proprietary to Spectrum that was divulged to Spectrum’s competitors in the Draft RFP to the MAC II Solicitation. Def. App. 14, 38-39, 122. Plaint. App. A 5-6.

(c) The Final RFP specification section 3.1.2e states in relevant part “[t]he MAC II shall have a ¾ inch pneumatic hose coupling, (A-A-59553 designation) that is capable of interfacing with and powered by the MC-7 Air Compressor located a minimum of 25 feet from the explosives (AFMAN 91-201)”. The Draft RFP contains a virtually identical specification section 3.1.2e which states in relevant part “[t]he MAC II shall be capable of interfacing with and powered by the MC-7 Air Compressor by using a ¾ inch pneumatic hose coupling, (A-A-59553 designation)”. Both of these specification sections contain a clear design specification requiring “a ¾ inch pneumatic hose coupling, (A-A-59553 designation)”. This design specification divulges one of the most important improvements made by Spectrum to the MAC, the larger pneumatic hose and hose coupling. The current MAC utilizes a 5/8 inch pneumatic hose and hose coupling. The larger pneumatic hose and hose coupling developed by Spectrum significantly improved the pneumatic trolley system that is an essential element to the MAC and acknowledged as proprietary to Spectrum in ¶ 5.1.1 of Appendix A to the CRADA. Def. App. 14, 38, 121. Plaint. App. A 5-6.

(d) Both the Draft and Final RFPs have identical specification section 3.2.1.5, Lighting, which states in relevant part “[a] lighting level of at least 75 foot-candles shall

be maintained over the entire main assembly area at 3 feet above the ground. The color of the light furnished shall be as near to the natural light as possible. The fixtures furnished shall not require more than 5 minutes of restart time when the light is turned off and back on again," Although this specification has both design and performance characteristics, this entire section is taken from the test results performed by Spectrum and delivered to the USAF on Spectrum's "new lighting system" for the MAC referenced in ¶ 5.1.1 of Appendix A of the CRADA as proprietary to Spectrum. Although the actual complete design for Spectrum's "new lighting system" for the MAC was not divulged in the RFPs, critical elements of the new lighting system were divulged which were proprietary to Spectrum and which would have provided Spectrum an advantage in the MAC II competitive procurement. Def. App. 14, 40, 123. Plaint. App. A 5-6.

(2) *__Specific Examples of Spectrum's Proprietary Information Divulged in the Draft RFP and Final RFP Contained in Spectrum's Unsolicited Proposal.__*

In addition to the above-referenced examples of Spectrum's proprietary information protected under the CRADA divulged in the Draft and/or Final RFP for the MAC II Solicitation, the following draft and RFP specification sections are further examples of proprietary information contained in the identified sections of Spectrum's Unsolicited Proposal in which Spectrum submitted its proprietary improvements to the MAC:

(a) Spectrum's Unsolicited Proposal, ¶ 4.2, Hoists, identifies the electric hoist that is divulged in Draft RFP specification section 3.2.1.1 referenced above. Plaint. App. B. Def. App. 38-39, 122. Def. App. 38-39.

(b) Spectrum's Unsolicited Proposal, ¶ 4.2 and 4.3, Hoists and Hoist Trolley, identify the proprietary "6,000 lb. load limit" divulged in Draft RFP specification section 3.2.1.1

which states in part that "[t]he MAC loading and unloading system shall have a working strength of 6,000 lbs." Plaint. App. B. Def. App. 38-39. Def. App. 38-39.

(c) Spectrum's Unsolicited Proposal, ¶ 4.6, Interface Control Board, identifies the "¾ inch tubing to provide a greater volume of air to the hoists and hand tools" that were divulged in the Draft and Final RFP specification section 3.1.2e referenced above. Plaint. App. B. Def. App. 38, 121.

(d) Spectrum's Unsolicited Proposal, ¶ 4.14, Tools, identifies a tool tray that was developed by Spectrum following the CRADA, and is divulged in the Draft RFP specification 3.2.1.9, and the Final RFP specification section 3.2.1.8, Tool Trays, as an added accessory identified and required in the MAC II Solicitation. Plaint. App. B. Def. App. 40, 123.

These examples of specific proprietary information, some of which are critical elements to the overall improvements to the MAC developed by Spectrum pre-CRADA, while certainly not exhaustive of the all cases in which Spectrum proprietary information was divulged, clearly raise genuine issues of material fact as to whether any proprietary information was divulged by the USAF in either the Draft RFP or the Final RFP for the MAC II Solicitation. Therefore, the Defendant's Motion for Summary Judgment should be denied as to the issues relating to divulging of Spectrum's proprietary information in the MAC II draft or final RFP.

C. *A Genuine Issue of a Material Fact Exists With Regards to Whether Former USAF Personnel Turner or Mank Divulged Spectrum's Proprietary Information in Violation of the CRADA and the Implied In Fact Contract Created by the Unsolicited Proposals.*

First, Defendant has failed to meet its initial burden of showing an absence of issues of material fact by totally failing to address the allegations made by the Plaintiff involving Mank.

The Amended Complaint at ¶¶ 22, 25, 31 -35, 44 and 59, and the Howard Affidavit, both specifically reference Mank's inquiring into and ultimately improperly divulging Spectrum's proprietary information, both while on active duty and in an official capacity with the USAF and after upon his retirement and subsequent employment by a competitor of Spectrum (who he assisted in preparing a Technical Proposal in response to the Solicitation for the MAC II). Plaint. App. A 6-7. The Defendant's failure to raise or reference Mank at all in its Motion for Summary Judgment, coupled with Spectrum's evidence submitted herewith, demonstrates that the Defendant's Motion for Summary Judgment should fail based upon Defendant's failure to meet its initial burden.

Second, the Defendant's sole basis for asserting an absence of any issue of material fact relating to Turner's allegations in the Amended Complaint is its contention that Turner did not receive any of Spectrum's proprietary information while serving in the USAF, thereby leading to the conclusion that all allegations presented by Spectrum with relation to Turner's involvement would fail. In contrast to Defendant's assertions, Spectrum has presented substantial evidence that Turner received all of Spectrum's proprietary MAC information while serving in his official capacity with the USAF. Plaint. App. A 4,6. Therefore, in light of Turner's admission in his Declaration that he was employed after retirement from the USAF as a consultant to B&D Machinery and Sales, Inc., which was ultimately awarded the MAC II contract offered by the USAF in 2003 (Def. App. 149-150), Defendant's Motion for Summary Judgment should be denied on this issue.

Defendant's Motion for Summary Judgment on this issue focuses only on Turner's visit to Beale AFB following his separation from the USAF apparently because of Turner's declaration states that he had "no involvement" with the MAC while in his position as the 46th

Test Wing Weapons Manager at Eglin AFB during the time period of the performance of the CRADA, that he had "no involvement" with the CRADA, and that he had "no knowledge concerning Spectrum's development of any particular improvements to the MAC either before, during, or after the CRADA." (Def. App. 147-148) However, in direct contradiction to Turner's declaration is the Affidavit of Spectrum Vice President Dwight Howard who stated that he personally provided Turner a two hour tour and briefing of the prototype of the improvements to the MAC that are the subject of this litigation while Turner was still in the USAF and in conjunction with Turner's official duties and that he specifically briefed Turner and his party on each and every improvement listed in ¶ 5.1.1 of Appendix A of the CRADA in great detail while showing Turner the prototype of the improvements to the MAC that Spectrum had manufactured set up at its laboratories. Plaint. App. A 4. Such contradictory testimony clearly establishes a genuine issue of material fact and requires denial of the Motion for Summary Judgment.

Spectrum also contests the Defendant's assertion that Turner did not view Spectrum's proprietary improvements to the MAC at Beale AFB. Turner's declaration states unequivocally that he reviewed a partially-assembled MAC "thoroughly" at Beale AFB, but that he did "not know who manufactured the MAC" that he saw (Def. App. 149). The total basis of the Defendant's argument on this particular issue is Turner's assertion that the "partially-assembled MAC" that he viewed at Beale AFB was "indistinguishable from the partially-assembled MAC" that he viewed at Industry Day at Eglin AFB. Def. App. 149. Howard's Affidavit, in direct contravention to Turner's, states that a number of prototype components of Spectrum's improvements to the MAC containing Spectrum's proprietary improvements were transported to Beale AFB for testing pursuant to the terms of the CRADA prior to Turner's visit in 2003. Plaint. App. A 2-3. In addition, Howard's Affidavit also states that he was personally called by

USAF personnel from Beale AFB and advised that Turner was requesting to view Spectrum's prototype improvements to the MAC, that they were being directed to provide Turner the opportunity to view those prototype components and that, in fact, Turner did view Spectrum's proprietary prototype components for the MAC. Plaint. App. A 6. In light of Turner's Declaration in which he admits that he thoroughly reviewed the MAC at Beale AFB, coupled with Howard's Affidavit stating that Turner obtained Spectrum's proprietary information at Beale AFB during his visit following his separation from the USAF, there is a genuine issue of material fact not subject to disposition on a Summary Judgment Motion.

The other issues raised by the Defendant in its arguments relating to the participation at Industry Day are not relevant to this Motion for Summary Judgment or to the underlying causes of action raised by Spectrum, because Spectrum does not allege that its proprietary information was divulged at Industry Day that was protected under the CRADA.

As a result of the above, it is clear that genuine issues of material fact exist with regards to if and when Turner obtained proprietary information from Spectrum, if and when Turner divulged such information in violation of the CRADA and in violation of the implied in fact contract resulting from the Unsolicited Proposal submitted by Spectrum. Therefore, Defendant's Motion for Summary Judgment must be denied.

2. Defendant's Motion to Dismiss Should Be Denied

A. *Standard of Review*

"A court's task in assessing a motion to dismiss for failure to state a claim upon which relief may be granted '"is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."' Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L. Ed. 2d 90 (1974)). A motion to dismiss under RCFC 12(b)(6) should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957)." Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 168 (Fed. Cl. 2005). Furthermore, in evaluating a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "assume that all well-pled factual assertions are true and make all reasonable inferences in favor of [the non-moving party]." New Valley Corp. v. United States, 119 F.3d 1576, 1580 (Fed. Cir. 1998), citing Berkovitz v. United States, 486 U.S. 531, 540 (1988) and Highland Falls –Fort Montgomery Cent. School Dist. v. United States, 48 F. 3d 1166, 1166-67 (Fed Cir. 1995).

B. *The United States Fundamentally Misunderstands Spectrum's Claims and Has Moved For Dismissal on a Non-Existent Issue*

In its' motion to dismiss under RCFC 12(b)(6), the United States displays a fundamental misunderstanding of the basis of Spectrum's claims and asks this Court to rule on a non-existent issue. The United States argues that Spectrum's references to 18 U.S.C. §§ 207(a) and 1905 and 5 C.F.R. Part 2637, provided merely for informational purposes in three paragraphs of a 62-paragraph Amended Complaint, somehow constitute the basis of Spectrum's cause of action. The United States then proceeds to brief and argue this illusory issue, basing its entire motion to dismiss on this misconception. In fact, however, the United States merely shows by this effort that it does not understand, or does not take seriously, Spectrum's actual claims – a problem which has plagued this litigation since its inception.

RCFC 12(b)(6), like its counterpart under the Federal Rules of Civil Procedure, allows a Court to limit an action appropriately by dismissing claims on which the plaintiff cannot possibly

prove a set of facts entitling it to relief. See, e.g., Conley v. Gibson, 355 U.S. at 45-46. In the case at bar, Spectrum has made three claims against the United States:

(a) Breach of Express Contract (Count I, paragraphs 6 – 41 of the Amended Complaint), based upon the United States' violations of the CRADA;

(b) Breach of Implied in Fact Contract (Count II, paragraphs 42 – 56 of the Amended Complaint), based upon the United States' mishandling of Spectrum's trade secrets and classified information submitted to the United States in a proposal by Spectrum after the CRADA Final Report; and

(c) Misappropriation of Trade Secrets (Count III, paragraphs 57 – 62 of the Amended Complaint), based upon the facts underlying Counts I and II.

The Defendant does not even mention in its Motion to Dismiss any of these three causes of action that form the foundation of the Amended Complaint, but rather focuses on the very limited references to 18 U.S.C. 207(a) and 5 C.F.R. Part 2637 that are not essential elements to any of Spectrum's three claims.

Each of Spectrum's three claims rests on the United States' mishandling of Spectrum's proprietary information and trade secrets, which caused this information to be divulged to the public in general and Spectrum's competitors in particular. The foundations for these claims in the Amended Complaint (which make no reference to 18 U.S.C. 207(a) or 5 C.F.R. Part 2637) include, but are not limited to, the following paragraphs:

> 27. After the Government failed to purchase the rights to the redesigned MAC from Spectrum, the Government deliberately breached its obligations to Spectrum under the CRADA to safeguard and protect Spectrum's intellectual property and proprietary information by improperly disclosing and widely disseminating to third parties, including competitors of Spectrum, Spectrum's intellectual property and proprietary information in the draft Request for Proposal specifications (dated March 25, 2003) ("draft RFP") and the Final Request for Proposal (dated May 1, 2003) specifications, for the design and production of a Munitions Assembly Conveyor (MAC), Solicitation No. F08635-03-R-0077, issued by the USAF ("Final RFP"). Copies of the draft RFP specification and the Final RFP specification are attached hereto,

and incorporated by reference herein, as Exhibits “B” and “C”, which solicitations utilized specifications that included Spectrum’s intellectual property and proprietary information relating to the redesigned MAC.

28. Although the Government did remove and alter several sections of the draft RFP following strenuous objections made by Spectrum to the USAF that such disclosure was improper and a breach of the CRADA that required the USAF to protect Spectrum’s intellectual property and proprietary information relating to the redesigned MAC, the Government deliberately and knowingly again breached the CRADA by subsequently issuing the Final RFP that further improperly disclosed to third parties (including Spectrum's competitors) Spectrum’s intellectual property and proprietary information relating to the redesigned MAC.

. . .

36. The Government further breached its obligations to Spectrum under the CRADA by failing to confer and consult with Spectrum before it published or otherwise publicly disclosed the results of the work as required by Paragraph 7.3 of the CRADA.

. . .

54. The Government knowingly, deliberately and improperly breached its obligation to Spectrum to maintain the confidentiality of the trade secrets and intellectual property of Spectrum contained in its Unsolicited Proposal by releasing the draft RFP dated March 25, 2003, and the Final RFP dated May 1, 2003, for Solicitation No. F08635-03-R-0077 (Exhibits “B” and “C”), because these solicitations contained these trade secrets and intellectual property misappropriated by the Government from Spectrum’s Unsolicited Proposal without the knowledge or approval of Spectrum.

55. The Government further breached its obligations to maintain the confidentiality of Spectrum’s trade secrets contained in its Unsolicited Proposal by allowing the contractor who ultimately won the bid on Solicitation No. F08635-03-R-0077 to physically view prototype products developed by Spectrum for the MAC, as well as proprietary information relating thereto, at AFCOMAC, Beale AFB, California, during the competition period under the Solicitation.

. . .

> 60. The Government knowingly, deliberately and improperly misappropriated Spectrum's trade secrets and proprietary information relating to the MAC, including the following:
>
> a. Modification of the gantry to upgrade to a 6,000 pounds load limit;
>
> b. The dolly brakes on the rail conveyor;
>
> c. Improvements to the air handling system including the interface control board to increase electrical power, and ¾ inch airlines throughout to enhance pneumatic operations;
>
> d. Modification to the rail conveyor to allow proper torque of bombs;
>
> e. The development of an electric hoist with powered trolley;
>
> f. New lighting system;
>
> g. A working table utilizing attachments to shipping container lids;
>
> h. Rail Conveyor Dolly; and
>
> i. Tool holding tray.
>
> 61. This action for misappropriation of trade secrets involve Government conduct arising out of and related to the express contract between Spectrum and the Government, namely the CRADA, and the implied in fact contract arising out of the Unsolicited Proposal, all as alleged above.

Spectrum's claims in the Amended Complaint clearly set forth legitimate causes of action upon which Spectrum could prove a set of facts entitling it to relief. If a motion under RCFC 12(b)(6) had been brought against any one of Spectrum's actual claims, which it has not, such motion would have been without merit and would have been denied under the applicable standard of review.

The United States erroneously argues that Spectrum's claims depend on a private right of action against the United States under 18 U.S.C. secs. 207(a) and 1905 and 5 C.F.R. Part 2637. They do not. To the contrary, even in the two paragraphs from Count I of the Amended Complaint cited by the United States in its brief (Paragraphs 33 and 34), one directly states that

the actions alleged therein breached the CRADA. The language in the Amended Complaint concerning possible violations of 18 U.S.C. and 5 C.F.R. is included merely for informational purposes and to more fully plead the relevant facts, but is not an essential element of Spectrum's claim. Those references to 18 U.S.C. and 5 C.F.R. could be stricken entirely without affecting the validity of Spectrum's claims at all. Moreover, no claim for relief is made in the Amended Complaint under 18 U.S.C. or 5 C.F.R. Indeed, a reading of Paragraphs 33 and 34 in context, rather than as cited out of context by the United States, shows that the citations to 18 U.S.C. and 5 C.F.R. are not a basis of Spectrum's claim.

As the United States' motion under RCFC 12(b)(6) has no merit, the motion should be denied. To the extent the Court would be inclined to grant the motion in whole or in part, however, Spectrum respectfully requests that any such action be without prejudice and that Spectrum be granted leave to amend its complaint and remove the references to 18 U.S.C. and 5 CFR.

Respectfully submitted,

s/ Terrance R. Ketchel

KETCHEL & LESTER
4 Eleventh Avenue, Suite 2B
Shalimar, Florida 32579
Tel: (850) 651-5508
Fax: (850) 651-5722
Florida Bar No. 39815
Attorney for Plaintiff

July 1, 2005

**CERTIFICATE OF FILING**

I hereby certify that on the 1st day of July, 2005, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Terrance R. Ketchel