IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SPECTRUM SCIENCES, INC.,
Plaintiff,
v.
UNITED STATES,
Defendant

No. 04-1366C
(Judge Francis M. Allegra)

PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims, Plaintiff submits its response to Defendant's Proposed Findings of Uncontroverted Facts in opposition to Defendant's Motion for Summary Judgment.

1. Plaintiff agrees with the finding as stated[1].

2. Plaintiff agrees with the finding as stated[2].

3. Plaintiff agrees with the finding as stated[3].

4. Plaintiff disagrees with the finding as stated. The proposed revision of the finding is as follows:

Appendix A to the CRADA, titled Work Plan for Improving Munitions Support Equipment, identified specific improvements previously made by spectrum, and tasked that these specific improvements be integrated, including specifically the following:

[1] It should be noted that the terms Munitions Assembly Conveyor ("MAC"), the Rapid Assembly of Munitions System ("RAMS"), and the Combat Munitions Assembly Conveyor ("CMAC") all refer to the same basic piece of equipment which have been labeled with different names over the course of its development. Plaintiff's Response to Proposed Findings shall refer to the current iteration of the MAC as "the Current MAC", and improvements made to the current MAC by Spectrum as "improvements to the MAC."
[2] The MAC referenced in this Proposed Finding is the "current MAC."
[3] The MAC referenced in this Proposed Finding is the "current MAC."

improvements: gantry; hoist; interface control board (ICB); tools; lighting; rail conveyor/dolly; containers; and other add-ons. Def. App. 12-13[4].

5. Plaintiff agrees with the finding stated, but the quote from Paragraph 5.1.1 of the CRADA, Appendix A is incomplete. The proposed revision of the finding includes the entire 5.1.1:

Paragraph 5.1.1 of Appendix A to the CRADA, states "Spectrum has supported the development of a product line of munitions handling equipment prior to this AGREEMENT and specifically claims intellectual property rights particularly as related to their existing product line, and design work completed on the laboratory RAMS[5] which includes modification of the gantry to 6,000 lbs. load limit, the breaking system on the rail conveyor, the interface control board to make it electrical/pneumatic, modification to the rail conveyor for torque of GBU's, the development of a 5,500 lb. electric hoist with powered trolley, new lighting system, and development of a working table with modification of container lids. WMOM will protect Spectrum's proprietary rights in accordance with Article 7 of this AGREEMENT." Def. App. 14. The product line of munitions handling equipment specifically identified in Paragraph 5.1.1 which were identified as having been developed prior to the CRADA, and to which the USAF specifically agreed to protect as Spectrum's proprietary rights are the improvements to the MAC referenced in the Amended Complaint and throughout this Plaintiff's Opposition to the Motion for Summary Judgment and Response to the Proposed Findings of Fact ("improvements to the MAC").

[4] "Def. App. __" refers to the appendix attached to Defendant's Motion to Dismiss and Motion for Summary Judgment which was filed concurrently with Defendant's Motion."

[5] The laboratory RAMS referenced in the CRADA and specifically in Paragraph 5.1.1.

6. Plaintiff agrees with the finding as stated.

7. Spectrum agrees with the first sentence of the finding as stated, but disagrees with the characterization or completeness of such characterization as stated in the second sentence of the finding. Plaintiff's proposed revision of the second sentence of the finding is as follows:

> The status report dated October 1, 2001 and the final report dated August 15, 2002, represent a summary of the work performed by Spectrum under the CRADA. Def. App. 19-21, 22-25. Of note is Part 3 of the reports which detail Spectrum's integration of the following specific improvements to the MAC as specifically referenced in Paragraph 3.1(e) of Appendix A to the CRADA. Def. App. 20, 23, 12-13. These specific improvements to the MAC which were tested by Spectrum for integration during the performance of the CRADA are the specific improvements to the MAC developed by Spectrum prior to entering into the CRADA and which were specifically referenced as proprietary to Spectrum to be protected by the USAF in Paragraph 5.1.1 of Appendix A to the CRADA. Def. App. 14, 12-13, 4-5.

8. Plaintiff disagrees with the finding as stated in the CRADA did require, and Spectrum did submit drawings and designs for the improvements to the MAC. The proposed revision of the finding is as follows:

> The CRADA did require drawings and/or designs for the improvements to the MAC developed by Spectrum. Paragraph 3.1(d) of Appendix A to the CRADA, states "document the results of the analysis, design, fabrication and testing UNDER this AGREEMENT." Def. App. 12. In compliance with the terms of the CRADA, Spectrum did submit drawings and/or design for their improvements to the MAC. Plaint. App. A 3. One such design and drawing package was specifically referenced in the status report

dated October 1, 2001 and final report under the CRADA dated August 15, 2002 at § 1 which states "Spectrum Sciences and Software, Inc. has explored, located, tested, developed drawing packages and received approval for both a new 4,000 lbs. pneumatic and a new manual hoist with repair kits. . . . "this hoist has been stock listed and is in DLA inventory." Def. App. 19, 22. Furthermore, in addition to the hoist, Spectrum submitted Engineering Change Proposals (ECP) to make engineering improvements to the certain current MAC components, including the hoist, lights, dolly stop, toolbox, and container legs. Each such improved individual MAC component has been accepted by the USAF as proprietary to Spectrum has been stock listed and is in the USAF inventory, and is currently being sold to the USAF for use on the current MAC. Plaint. App. A 3-4. For each such engineering change proposal, drawing/design packages were submitted to the USAF by Spectrum, and which drawing/design packages have been acknowledged as proprietary to Spectrum. Plaint. App. A 3-4. In addition to these specific submittals, Spectrum provided the USAF with numerous explanations of their improvements to the MAC, including review and testing by the USAF of specific prototype components of the improvements to the MAC made by Spectrum, which improvements and informal reviews and submittals by Spectrum to the USAF included design and/or drawing packages including some specific formal design engineering drawings. Such design and/or drawing packages submitted by Spectrum to the USAF for the improvements to the MAC occurred throughout the almost two year performance under the CRADA, starting on October 17, 2000 through the final reported dated August 15, 2002. Plaint. App. A 3.

9. Plaintiff agrees with the findings as stated in the first sentence, but disagrees with the characterization of the unsolicited proposal referenced in the second sentence. Plaintiff's proposed revision of the second sentence of the finding is as follows:

> The unsolicited proposal for the CMAC[6] was based primarily on the improvements made to the MAC prior to the execution of the CRADA, which improvements were tested and integrated into the old MAC during the performance of the CRADA, along with some additional elements to the proposed CMAC which were developed following the CRADA. Plaint. App. B.

10. Plaintiff agrees with the finding as stated.

11. Plaintiff agrees with the finding as stated.

12. Plaintiff agrees with the finding as stated except for the characterization of the specifications for the draft proposal as a "performance" specification. Plaintiff contends that the draft Request for Proposal and final Request for Proposal for the MAC have both the design and performance characteristics.[7]

13. Plaintiff agrees with the finding as stated.

14. Plaintiff agrees with the finding as stated.[8]

15. Plaintiff agrees with the finding as stated.[9]

16. Plaintiff agrees with the finding as stated except that Plaintiff disagrees with the Defendant's attempt to characterize the specifications as performance specifications only. Plaintiff contends that the specifications had both design and performance characteristics.[10]

---

[6] As referenced earlier, the Combat Munitions Assembly Conveyor ("CMAC") was a new name provided to the proposed improved version of the earlier-named Rapid Assembly of Munitions System ("RAMS") and the Munitions Assembly Conveyor ("MAC").

[7] Utility Contractors, Inc. v. United States, 8, Cl. Ct. 42, 50n.7 (1985).

[8] The MAC referenced in this finding that was provided for viewing at Industry Day was the then-current MAC which contained none of the improvements to the MAC developed by Spectrum that are the subject of this litigation.

[9] The MAC referenced in this finding that was provided for viewing at Industry Day was the then-current MAC which contained none of the improvements to the MAC developed by Spectrum that are the subject of this litigation.

17. Plaintiff agrees with the finding as stated.

18. Plaintiff disagrees with the finding as stated in that Spectrum did object to the USAF allowing the participants of Industry Day to view its proprietary container for the then-current MAC. However, other than this objection, Plaintiff does not disagree with Defendant's finding that "Spectrum did not object to the display of a fully-assembled MAC or its related equipment and industry and did not express concern to the USAF that it believes that the MAC and related equipment shown to the attendees consisted of Spectrum's proprietary information" because the "assembled MAC" and its 'related equipment' contained none of the improvements to the MAC that were developed by Spectrum prior to the CRADA and which are the subject of this litigation. Spectrum would have no reason to object to Industry Day attendees viewing the then-current MAC, which was a well-known USAF inventory item.

19. Plaintiff agrees to the finding as stated.

20. Plaintiff agrees to the finding as stated.

21. Plaintiff disagrees with the finding as stated because Senior Master Sergeant Turner ("Turner") was shown prototype components of the improvements to the MAC developed and manufactured by Spectrum prior to the CRADA that were being tested at Beale AFB. These prototype components to the MAC were substantially distinguishable from the-current MAC that was on display at Industry Day a month earlier.

22. Plaintiff agrees with the finding as stated except to clarify that Turner was allowed to ask technical questions after viewing the prototype components to improvements to the MAC that were developed and manufactured by Spectrum in addition to the then-current MAC also on display at Beale AFB. Plaint. App. A 6.

---

[10] Utility Contractors, Inc. v. United States, 8, Cl. Ct. 42, 50n.7 (1985).

23. Plaintiff disagrees with the finding as stated because not only did Turner learn about designs while viewing the prototype components of the improvements to the MAC at Beale AFB, but also received an in-depth briefing of each and every feature of the improvements to the MAC developed and manufactured by Spectrum prior to the CRADA, while visiting the Spectrum laboratory which contained a fully-assembled prototype of the improvements to the MAC. This briefing to Turner occurred during the performance of the CRADA and in Turner's official capacities with 46th Test Wing Weapons Shop at Eglin AFB as part of Spectrum's performance under the CRADA. Plaint. App. A 4.

24. Plaintiff agrees with the finding as stated.

PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

25. Prior to Spectrum and the USAF entering into the CRADA on October 17, 2000, Spectrum engaged in substantial research and development on improvements to the Munitions Assembly Conveyor ("MAC"). This pre-CRADA research and development effort by Spectrum was funded independent of any government funding in the amount of approximately $500,000.00. As part of this research and development effort, Spectrum created an in-house laboratory at Spectrum to conduct MAC research and development, and Spectrum also manufactured a prototype of the improvements to the MAC. All such research and development efforts were conducted prior to entering into the CRADA. Plaint. App. A 2.

26. Following Spectrum's research and development efforts, which resulted in the manufacture of a prototype MAC containing the improvements to the MAC, Spectrum invited the USAF to physically view these improvements to the MAC to determine the USAF's interest in procuring, testing, or further researching such improvements to the MAC. The USAF was

interested in testing and integrating this new technology which ultimately resulted in Spectrum and USAF entering into the CRADA. Plaint. App. A 2.

27. Article 7 of the CRADA, titled Proprietary Information, contain several relevant paragraphs. Paragraph 7.1 stated "neither party to this AGREEMENT shall deliver to the other party any PROPRIETARY INFORMATION not developed UNDER this AGREEMENT, except with the written consent of the receiving party. Unless otherwise expressly provided in a separate document, such PROPRIETARY INFORMATION shall not be disclosed by the receiving party except under a written agreement of confidentiality to employees and contractors of the receiving party who have a need for the information in connection with their duties UNDER this AGREEMENT." Def. App. 4-5. Paragraph 7.3 states "the parties agree to confer and consult with each other prior to publication or other public disclosure of the results of work under this AGREEMENT to ensure that no proprietary information or military critical technology or other controlled information is released." Def. App. 5. Paragraph 5.1.1 of Appendix A to the CRADA is recited in its entirety in Plaintiff's Response to Defendant's Proposed Finding No. 5, which identifies the specific intellectual property rights claimed in Spectrum's existing product line relating to the improvements to the MAC and which recites that the USAF "will protect Spectrum's proprietary rights in accordance with Article 7 of this AGREEMENT." Def. App. 14.

28. During the performance of the CRADA, and as part of the requirements contained therein, Spectrum delivered to the USAF at Beale AFB a number of individual components of the improved MAC that were developed and manufactured by Spectrum prior to entering into the CRADA. The purpose for delivering these improved MAC components to Beale AFB was to

allow the USAF to test such improved MAC components pursuant to the CRADA. Plaint. App. A 2-3.

29. During the performance of the CRADA, Spectrum provided the USAF personnel substantial amounts of specific design information and test results for its improvements to the MAC over the almost two year period of the performance of the CRADA. Examples of specific design information provided to the USAF include: (a) pneumatic hoist design; (b) electric hoist design; (c) lighting design; (d) gantry design; (e) dolly stop design; (f) torque bar design; and (g) compressed air source design. Plaint. App. A 3.

30. During the performance under the CRADA, five of the improvements to the MAC that were developed by Spectrum prior to entering into the CRADA, including specific designs for such improvements, were submitted and accepted by the USAF as Spectrum proprietary items and are currently being sold to and are being utilized by the USAF for use on with the MAC currently in the USAF inventory. These items, accepted as proprietary to Spectrum, include the pneumatic hoist, lights, dolly stop, MAC containers, and MAC container legs. Plaint. App. A 3-4.

31. While still a member of the USAF, Turner visited the Spectrum laboratory which contained the prototype containing the improvements to the MAC while in his official capacity with the USAF. Spectrum, pursuant to their obligations under the CRADA, provided a two hour briefing to Turner of all of the improvements to the MAC developed and later manufactured as a prototype by Spectrum prior to the entry into the CRADA. Each such improvement to the MAC developed by Spectrum was briefed in detail. Plaint. App. A 4.

32. Following submission of the final report of the CRADA on August 15, 2002, Spectrum was invited to submit an unsolicited proposal that would encompass all the

improvements to the MAC developed by Spectrum prior to the CRADA, as well as any improvements to the MAC developed after completion of the CRADA. Upon rejection of Spectrum's unsolicited proposal by the USAF on or about March 25, 2003, Spectrum became aware for the first time that the USAF was planning to conduct a competitive procurement to produce an improved version of the MAC. Plaint. App. A 4.

33. Following receipt and review of the Draft RFP for the MAC II, Spectrum complained vigorously to USAF officials that the Draft RFP contained elements of Spectrum's proprietary information protected under the CRADA and under the unsolicited proposal. As a result of Spectrum's objections and USAF's review of the Draft RFP, certain provisions of the Draft RFP specifications were altered to remove some of the proprietary information relating to Spectrum's improvements to the MAC. Plaint. App. A 5.

34. Shortly following the publication of the Final RFP on the MAC II solicitation, Dwight Howard received a phone call from Senior Master Sergeant Potratz ("Potratz") at Beale AFB, who informed Howard that former Turner was requesting to see Spectrum's prototype components of its improvements to the MAC. Spectrum's Dwight Howard objected vehemently to allowing Turner to review Spectrum's improvements to the MAC, but was informed by Potratz that USAF personnel from Eglin AFB were directing that he allow Turner access to review and view Spectrum's prototype components and that Turner did in fact view these Spectrum prototype components as part of his consultation to D&D Machinery and Sales, Inc. with regards to the MAC II Solicitation. Plaint. App. A 6. Turner's stated purpose in visiting Beale AFB was to "gather information for D&D's upcoming proposal for the MAC II contract." Turner Decl. Paragraphs 2-4.

35. Senior Master Sergeant Mank ("Mank") served at the lead USAF agency involved with the CRADA throughout the period of the development of the Spectrum improvements to the MAC prior to the CRADA and during significant portions of the testing and verification of the improvements to the CRADA pursuant to the CRADA. In such capacity, Mank had continuous and repeated access to the design and viewing of the improvements to the MAC developed by Spectrum. Following Mank's retirement from the USAF, Mank participated in the Industry Day for the MAC II solicitation as a representative of a private contractor or contractors participating in the MAC II solicitation. Plaint. App. A 6-7.

Respectfully submitted,

s/ Terrance R. Ketchel

KETCHEL & LESTER
4 Eleventh Avenue, Suite 2B
Shalimar, Florida 32579
Tel: (850) 651-5508
Fax: (850) 651-5722
Florida Bar No. 39815

Attorney for Plaintiff

July 1, 2005

**CERTIFICATE OF FILING**

I hereby certify that on the 1st day of July, 2005, a copy of the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Terrance R. Ketchel