# In The United States Court of Federal Claims

No. 04-1366C

(Filed: December 19, 2005)

**This Opinion Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.**

---

SPECTRUM SOFTWARE INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**OPINION**

---

**ALLEGRA, Judge:**

This action is before the court on defendant's Motion to Dismiss and for Summary Judgment. Argument is deemed unnecessary. For the reasons that follow, the court **GRANTS**, **IN PART**, and **DENIES**, **IN PART**, defendant's motion.

## I. BACKGROUND

Briefly, the facts here are as follows:

Plaintiff, Spectrum Sciences (Spectrum), manufactures and maintains munitions support equipment for the United States Department of Defense. In this suit, it claims that defendant improperly divulged propriety information, trade secrets, and intellectual property relating to improvements that Spectrum made to the Munitions Assembly Conveyor (MAC), an existing Government inventory item used by the Air Force in the final assembly of munitions.

Prior to October 17, 2000, Spectrum engaged in design and manufacturing tests of the MAC to improve its performance. As part of this effort, Spectrum installed a laboratory to conduct research and development and manufactured prototypes for improvements to the MAC. During this period, it is alleged that plaintiff demonstrated various modifications and improvements to United States Air Force Air Armament Center personnel and supplied the Air

Force with a number of individual components. According to plaintiff, these demonstrations were made only after the Air Force had agreed to hold plaintiff's prototypes, trade secrets, and intellectual property in the strictest confidence.

On October 17, 2000, plaintiff entered into a Cooperative Research and Development Agreement (CRADA) with the Air Force Air Armament Center, which agreement, as stated in an accompanying appendix, was designed "to provide a vehicle for the research, development, design, and fielding of improved munitions handling and loading support equipment and therefore improve the combat capability of the United States Air Force." This same appendix identified specific improvements that were to be studied for potential integration into the MAC, including improvements in the gantry, hoist, interface control board, tools, lighting, and rail conveyor/dolly. In the CRADA, the Air Force agreed to "protect Spectrum's proprietary rights in accordance with Article 7 of the agreement."[1] The latter article, entitled "Proprietary Information," contained several provisions relevant to this lawsuit. Paragraph 7.1 stated that "neither party to this agreement shall deliver to the other party any proprietary information not developed under this agreement, except with the written consent of the receiving party," and continued that "[u]nless otherwise expressly provided in a separate document, such proprietary

---

[1] For purposes of the contract, the phrase "proprietary information" was defined as –

information which embodies trade secrets or which is confidential technical, business or financial information provided that such information:

i) is not generally known, or is not available from other sources without obligations concerning its confidentiality;

ii) has not been made available by the owners to others without obligation concerning its confidentiality;

iii) is not described in an issued patent or a published copyrighted work or is not otherwise available to the public without obligation concerning its confidentiality; or

iv) can be withheld from disclosure under 15 U.S.C. § 3710a(c)(7)(A) & (B) and the Freedom of Information Act, 5 U.S.C. § 552 et seq; and

v) is identified as such by labels or markings designating the information as proprietary.

Paragraph 7.4 of the CRADA further indicated that the Air Force "agrees that any design, technologies, or the integration of technologies developed under [Spectrum] funds are proprietary to [Spectrum]."

information shall not be disclosed by the receiving party except under a written agreement of confidentiality to employees and contractors of the receiving party who have a need for the information in connection with their duties . . . ." Paragraph 7.3 also stated that "the parties agree to confer and consult with each other prior to publication or other public disclosure of the results of work under this agreement to ensure that no proprietary information or military critical technology or other controlled information is released." This paragraph further stated that "[p]rior to submitting a manuscript for publication or before any other public disclosure, each party will offer the other party ample opportunity to review such proposed publication or disclosure, to submit objections, and to file applications for letters patent in a timely manner."

As required by the CRADA, on August 15, 2002, plaintiff submitted to the Air Force a final report summarizing its work, detailing various improvements that were tested by Spectrum. Following the submission of this final report, plaintiff claims that the Air Force indicated its willingness to accept an unsolicited proposal from plaintiff for a modified MAC. In February 2003, plaintiff submitted an unsolicited proposal to sell the Air Force an improved version of the MAC, a product that Spectrum called the Combat Munitions Assembly Conveyor (CMAC). The proposal included a prominent restrictive legend prohibiting the use or disclosure by the government of plaintiff's trade secrets and proprietary information for any purpose other than the evaluation of the proposal. On March 25, 2003, the Air Force notified plaintiff that it would not accept plaintiff's proposal because there was a preexisting acquisition under way to satisfy the Air Force's requirement for an improved MAC, known as the MAC II.

On April 1, 2003, the Air Force issued a draft request for proposal specifications (draft RFP). Approximately two weeks later, on April 16, 2003, the Air Force held a "MAC II Industry Day" at Englin Air Force Base in Florida. The purpose of this meeting, which included various Air Force officials and representatives from private contractors, was to discuss and help refine the draft RFP. Among the private participants at this meeting was a former Air Force sergeant, Daniel T. Mank, who while working with the Air Force allegedly had access to Spectrum's proprietary information. The parties disagree as to whether the participants at this meeting were allowed to view prototypes of the improvements that had been proposed by Spectrum or otherwise were given access to Spectrum's proprietary information. On May 1, 2003, the Air Force issued a final request for proposal specifications, for the design and production of the MAC II (solicitation # F08635-03-R-0077) (final RFP). Approximately two weeks later, on May 13, 2003, CM Sgt. Tom Turner visited Beale Air Force Base in California and was allowed to gather information for the MAC II proposal design. The parties disagree as to whether Sgt. Turner was allowed to view prototypes of the improvements that had been proposed by Spectrum, or otherwise was given access to Spectrum proprietary information. On or about August 15, 2003, the Air Force announced that D&D Machinery Sales, Inc. was the apparent successful offeror in the MAC II competition.

Spectrum alleges that the Air Force disclosed the company's proprietary material and trade secrets in the draft and final RFP, thereby breaching not only the CRADA's safeguard requirements, but also an implied contract created by plaintiff's submission of the unsolicited proposal. Plaintiff argues that the same facts support a theory of misappropriation of trade

secrets. Additionally, Spectrum alleges that defendant breached the CRADA and the implied contract when it allowed the contractor which won the bid to view the prototype products developed by plaintiff for the MAC. Finally, plaintiff alleges that the Air Force improperly allowed two of its former employees, Sgts. Mank and Turner, to share plaintiff's proprietary information with its competitors.

Plaintiff initially filed its complaint on August 23, 2004, and an amended complaint on March 14, 2005. Defendant filed its answer to the amended complaint on March 31, 2005, denying the allegations therein. On May 31, 2005, defendant filed a motion to dismiss and for summary judgment, to which plaintiff responded on July 7, 2005.

## II. DISCUSSION

Defendant's motion challenges certain aspects of plaintiff's complaint under RCFC 12(b)(6) and other aspects under RCFC 56.

Defendant first asserts that Spectrum has not presented a claim upon which relief can be granted with respect to its allegation that the two former employees of the Air Force improperly divulged proprietary information belong to Spectrum. Dismissal under RCFC 12(b)(6), for failure to state a claim, is appropriate "when the facts asserted by the plaintiff do not entitle him to a legal remedy." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000). In reviewing such a motion, the court must accept, as true, the facts alleged in the complaint, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999), and must construe all reasonable inferences in favor of the non-movant. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

Under the Tucker Act, this court has jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1) (2004). The Tucker Act, however, merely confers jurisdiction on this court and "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976); *see also Wells v. United States*, 46 Fed. Cl. 178, 180 (2000). Along these lines, the Supreme Court has instructed that in order to bring a claim against the United States founded on a statute or regulation, the provisions relied upon must contain language that can fairly be interpreted as "mandating compensation from the government." *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)); *see also United States v. Mitchell*, 463 U.S. 206, 216-18 (1983); *Tippett v. United States*, 185 F.3d 1250, 1254-55 (Fed. Cir. 1999); *United States v. Connolly*, 716 F.2d 882, 886-87 (Fed. Cir. 1983) (en banc), *cert. denied*, 465 U.S. 1065 (1984).

In at least some regards, plaintiff's complaint appears to seek damages from the United States for disclosures made by two former Air Force sergeants, Tom Turner and Dan Mank. In particular, Spectrum avers that "after they retired from government service, Turner and Mank

improperly utilized Spectrum's confidential and proprietary information in breach of the CRADA, and in violation of 18 U.S.C. § 1905, to assist Spectrum's competitors submitting proposals" on the RFP here. The complaint further asserts that the involvement of Messrs. Turner and Mank on behalf of Spectrum's competitors violated 18 U.S.C. §§ 207(a) and 207(A)(2), as well as various regulations promulgated by the Office of Government Ethics at 5 C.F.R., Part 2637. Plainly, however, none of the cited statutes or regulations include the requisite "money-mandating" language mandating the recovery of compensation from the United States. Plaintiff does not contest this and, indeed, cites no other provisions upon which to support a claim against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department." Accordingly, the court dismisses counts 33 and 34 of Spectrum's amended complaint to the extent that they assert such a money-mandating claim.

But, this analysis does not resolve plaintiff's contract-based claims, in which it asserts not only that Messrs. Turner and Mank effectively breached the CRADA, but also that the Air Force effectuated a breach of the CRADA, as well as the breach of a separate implied-in-fact contract, when it released plaintiff's confidential and proprietary information in various ways, including primarily in the draft RFP. Defendant has challenged these claims in the portion of its motion focusing on summary judgment.

Summary judgment, of course, is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho. Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000). When reaching a summary judgment determination, the court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *see also Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A] [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). Rather, the court must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250-52. In doing this, all facts must be construed in a light most favorable to the nonmoving party and all inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

In the instant case, there is no question that Messrs. Turner and Mank did not, by allegedly divulging proprietary information to their new employers, themselves effectuate a breach of the CRADA or the alleged implied-in-fact contract that may vicariously be attributed to their former employer, the defendant. Simply put, without some contractual assumption of duty, the United States is not liable for the actions of its former employees. *See* John Cibinic, Jr. &

Ralph C. Nash, Jr., Administration of Government Contracts 67 (3d ed. 1995). However, that rule does not resolve the question whether the Air Force breached the CRADA and the alleged implied-in-fact contract by failing to take appropriate steps to ensure that Messrs. Turner and Mank were legally prohibited from releasing any proprietary information. As to this issue, there are material questions of fact both as to what those individuals knew in terms of the plaintiff's proprietary information (*e.g.*, whether they reviewed only the existing MAC or the improvements proposed by Spectrum); what steps, if any, the Air Force took to regulate their receipt of that information and their future conduct with respect thereto; and whether, in fact, any proprietary information was communicated to the employers of these individuals. Accordingly, since plaintiff's complaint may reasonably be construed to raise these issues, *see*, *e.g.*, paragraph 33, this court may not grant summary judgment on this aspect of plaintiff's claim.

Likewise, genuine issues of material fact abound concerning plaintiff's core complaint, that is, that the Air Force breached the CRADA and an implied-in-fact contract in directly revealing Spectrum's proprietary information both in the draft and final RFPs, as well as in meeting with Spectrum's competitors. Here, there are questions as to exactly what proprietary information the Air Force received, both as part of the CRADA and in plaintiff's unsolicited proposal, including whether the Air Force obtained specifications, drawings and prototypes of various improvements Spectrum had developed for the MAC. Numerous question also exist as to whether the information supplied by Spectrum remained proprietary (at least as defined in the CRADA) after it was received by the Air Force, and precisely what the Air Force disclosed in terms of Spectrum's proprietary information in both the procurement documents and contractor meetings. Again, the existence of these factual questions precludes the granting of summary judgment to defendant on these contractual aspects of plaintiff's complaint.

## III. CONCLUSION

In sum, while this court must dismiss that portion of plaintiff's complaint that raises a non-contractual Tucker Act claim related to the conduct of the former Air Force employees, it must deny defendant's motion for summary judgment to the extent it is related to the contract claims, in various forms, raised by plaintiff in its complaint. In the court's view, discovery must proceed with respect to the latter claims. Toward that end, on or before **January 17, 2006**, the parties shall file a joint status report indicating how that discovery shall proceed, with a specific schedule therefor.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge