IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SPECTRUM SCIENCES AND SOFTWARE, INC., Plaintiff, | ) | |
| v. | ) | No. 04-1366C (Judge Allegra) |
| THE UNITED STATES, Defendant. | ) | |

JOINT STIPULATION OF FACTS

Pursuant to Appendix A, ¶ 17, of the Rules of the United States Court of Federal Claims, and the Court's order dated October 31, 2007, the parties stipulate to the following facts in this case.

1. Spectrum Sciences and Software, Inc. ("Spectrum"), is a Florida-based, established provider of munitions assembly systems to the United States, including the Munitions Assembly Conveyor ("MAC"), formerly known as the Rapid Assembly of Munitions System ("RAMS").

2. The United States acted primarily in the manner that is the subject of this dispute by and through the Air Force Materiel Command, and within the Air Force Materiel Command, the Munitions Material Handling Equipment ("MMHE") Focal Point of the Air Armament Center, Eglin Air Force Base, Florida. The MMHE Focal Point researches and develops munitions support equipment for the Air Force and served as

the primary point of contact for Spectrum under Cooperative Research and Development Agreement No. 00-AAC-02 ("CRADA").

3. The MAC, originally developed in the early 1980s, is a sizable item that has been utilized in the final assembly of munitions by Air Force personnel at facilities around the world for several decades.

4. The MAC and its components were manufactured for the Air Force by several firms, including Spectrum and D&D Machinery and Sales.

5. By the late 1990s, Air Force personnel were encountering performance problems with the MAC, which was designed to handle the smaller, less complicated ordnance of a bygone era – not the heavier guided munitions (e.g., the JDAM) then in use.

6. On October 17, 2000, the Air Force and Spectrum entered into the CRADA. The CRADA reflects the review and approval of over ten different Air Force officials.

7. In accordance with the terms of the CRADA, Spectrum submitted to the Air Force status reports dated August 15, 2001, and October 1, 2001, and a subsequent status report dated August 15, 2002.

8. In addition to Spectrum's self-funding of its pre-CRADA developments, Spectrum also self-funded all of its CRADA development effort. The CRADA did not contemplate that monies would be exchanged between the parties.

9. The Air Force did not obtain a written agreement of confidentiality from any of its employees in connection with the CRADA. The Air Force asserts that it was not required to obtain confidentiality agreements from its employees regarding the CRADA.

10. Lieutenant Colonel Gretchen Rauch, now retired, served in the United States Air Force for approximately 24 years and retired from the Air Force on September 1, 2006.

11. From mid-2001 until her retirement in September 2006, Colonel Rauch served as the deputy director of an acquisition program office at Eglin Air Force Base, Florida.

12. Colonel Rauch testified that she first learned of the MAC sometime in the fall of 2001, during a status briefing by Scott Ahlborn about an illumination study that he had just completed to improve lighting for the MAC.[1]

---

[1] As suggested by the Court, the parties have stipulated that Col. Rauch and Ms. Turner testified at their depositions as indicated herein and if called would so testify. Such stipulations are introduced by "Col. Rauch testified" or "Ms. Turner testified." A particular party, however, may not concede (and indeed may dispute) the accuracy of the underlying testimony. The parties, moreover, out of an abundance of caution, note that either party may dispute the materiality of a particular fact contained in these stipulations.

13. Senior Master Sergeant ("SMSgt") Daniel Mank, now retired, was involved with the Spectrum CRADA from its inception until March 1, 2002. Until his retirement, he was the deputy head of the MMHE Focal Point.

14. Chief Master Sergeant ("CMSgt") Thomas Turner, now retired, worked at Eglin Air Force Base from before the inception of the Spectrum CRADA until his retirement on March 1, 2002.

15. Colonel Rauch was aware of the Spectrum CRADA and reviewed the Spectrum CRADA at the completion of that CRADA.

16. Colonel Rauch testified that the Air Force used information from the CRADA in connection with the MAC II acquisition. She also testified that she conducted or participated in outbriefings concerning what was gathered and learned during the CRADA as part of the acquisition process.

17. Colonel Rauch testified that proprietary information is very much safeguarded by the Air Force, especially in connection with the acquisition process. She testified that, "[i]f we had any data or any type of briefing, a slide or an item that said Spectrum proprietary on it, it would not have been included in a briefing that would have been given to the public."

18. Colonel Rauch testified that, had there been proprietary information involved with the Spectrum CRADA, Air Force technical folks would have identified such

proprietary information and informed other Air Force participants including herself.

19. Colonel Rauch's organization developed the acquisition strategy for a program to purchase new MACs, generally referred to as a MAC II. Her organization presented an acquisition strategy briefing to the leadership in the acquisition chain in order to gain approval for the program. This briefing discussed the funding, the contracting, the logistics, the engineering, and the schedule for the program.

20. This briefing also discussed what the Air Force had learned from the CRADA.

21. The Air Force convened a "murder board" for the MAC II acquisition strategy briefing during which various issues were discussed and challenged. The MAC II murder board took place earlier than the acquisition strategy briefing.

22. Colonel Rauch testified that the photographs in the MAC acquisition strategy briefing might have been taken in the Spectrum laboratory when the Air Froce was working with Spectrum during the CRADA.

23. The Air Force began the MAC II procurement as early as January 2002. The Air Force MAC II procurement team included, among others: Lieutenant Colonel Rauch (MAC II source selection authority), Lieutenant John D. Kyzar (program manager of the MAC II program), Karen S. Turner

(contracting officer), Christi O'Leary (contracting specialist), Mark Hillman (senior engineer), Jonathan Markle (junior engineer), CMSgt James Shelengoski (MMHE), and MSgt Scott Ahlborn (MMHE).

24. Karen S. Turner is a current employee of the Air Force at Eglin Air Force Base, Florida. She has been employed by the Air Force for about 24 years.

25. Ms. Turner has been a contracting officer since 1996, and is currently a contracting officer at Eglin Air Force Base.

26. Ms. Turner served as the contracting officer for the MAC II program through the award of the contract in 2003.

27. Prior to her involvement with the MAC II program, Ms. Turner had no involvement with the MAC.

28. On February 19, 2003, Spectrum submitted an unsolicited proposal to sell the Air Force a newly designed MAC, a product that Spectrum called the Combat Munitions Assembly Conveyor ("CMAC").

29. Ms. Turner and her contracting personnel received Spectrum's unsolicited proposal.

30. On February 27, 2003, the Air Force acknowledged receiving the Unsolicited Proposal.

31. Ms. Turner testified that she and her contracting colleagues followed the guidelines in the FAR and the AFMC guidelines for handling unsolicited proposals.

32. Ms. Turner testified that the contracting program management, Chief Master Sergeant James Shelengoski, and Mr. Alan Luthy reviewed Spectrum's unsolicited proposal.

33. Ms. Turner testified that the technical and engineering personnel did not see Spectrum's unsolicited proposal and may not even have known about its existence.

34. Colonel Rauch was informed by a contracting official as to the receipt of Spectrum's unsolicited proposal, and she instructed the contracting official to set the unsolicited proposal aside and unopened. Colonel Rauch testified that she would have removed from her solicitation drafting team, any individual whom she learned had reviewed the Spectrum unsolicited proposal.

35. Colonel Rauch testified that the Air Force would not accept any unsolicited proposal from any company when there is an active acquisition for the same product.

36. Colonel Rauch herself never saw Spectrum's unsolicited proposal.

37. On March 25, 2003, Ms. Karen Turner rejected the unsolicited proposal upon the grounds that there was a pre-existing acquisition under way to satisfy the Air Force's requirement for an improved MAC.

38. On April 1, 2003, the Air Force electronically published the Draft Request for Proposal ("Draft RFP") for the MAC II.

39. The Draft RFP was issued under Solicitation No. F08635-03-R-0077.

40. Colonel Rauch testified that the Air Force did not give Spectrum an opportunity to review the draft performance specification of the RFP before it was released to the public.

41. Colonel Rauch testified that she believed that it would have violated Air Force acquisition rules to give Spectrum a copy of the draft performance specification before any public release.

42. Colonel Rauch testified that she did not remember receiving any complaints from Spectrum about the Draft RFP.

43. Ms. Turner testified that she did not recall Spectrum objecting to the Draft RFP as containing Spectrum's proprietary information.

44. On April 16, 2003, the Air Force held a "MAC II Industry Day" at Eglin Air Force Base, for the purpose of permitting the Air Force and industry participants to discuss the Draft RFP and the procurement of the MAC II.

45. Air Force officials and 22 individuals from private industry participated in the MAC II Industry Day.

46. Spectrum officials Dwight Howard, Pat Carpenter, Randy Henning and Danny Bridges attended the MAC II Industry Day.

47. Mr. Thomas Turner, then retired from the Air Force, attended Industry Day for his consulting firm,

Weapons System Design and Manufacturing. D&D Machinery & Sales, Inc. ("D&D"), a manufacturer of the existing MAC, subsequently retained Mr. Turner to assist in preparing D&D's MAC II proposal.

48. Mr. Daniel Mank, then retired from the Air Force, attended Industry Day as a representative for Zitec, a competing contractor.

49. Colonel Rauch testified that she had no concerns as to Mr. Mank's participation at Industry Day on behalf of a potential offeror in the MAC II competition.

50. Colonel Rauch testified that she did not investigate what information Mr. Mank may have had access to in the context of his involvement with MMHE and the MAC.

51. Ms. Karen Turner testified that some containers were on display at Industry Day.

52. Colonel Rauch testified that she was aware that Mr. Thomas Turner had traveled to Beale Air Force Base, California, in connection with the MAC II RFP.

53. Colonel Rauch testified that she had no authority over Beale Air Force Base and had no control over the actions of Beale Air Force Base.

54. Colonel Rauch testified that she conducted no investigation as part of the acquisition process as to what Mr. Turner had access to during his visit to Beale Air Force Base.

55. On May 1, 2003, the Air Force electronically published the Final Request for Proposal ("Final RFP") for the MAC II.

56. The Air Force received five proposals in connection with the MAC II competition.

57. Spectrum submitted a proposal to the Air Force in response to Solicitation No. F08635-03-R-0077. D&D and Zitec also submitted proposals in response to the solicitation.

58. On or about August 15, 2003, the Air Force announced that it had selected D&D as the successful offeror in the MAC II competition at an evaluated price of $13,423,416.

59. During proposal evaluation, Spectrum and D&D Machinery both received a mission capability rating of green, and a proposal risk rating of low, the highest possible ratings available.

60. On August 22, 2003, Spectrum filed a protest with the Government Accountability Office ("GAO") seeking a reversal of the award and claiming that the Air Force's Draft and Final RFPs had improperly released Spectrum's proprietary information.

61. On September 16, 2003, the GAO dismissed Spectrum's protest as untimely.

62. Mr. Mank now sells MAC piece parts and other munitions handling equipment to the Air Force.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director

s/ Craig A. Holman

CRAIG A. HOLMAN
Arnold & Porter, LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tele: (202) 942-5722
Fax: (202) 942-5999

Attorney for Plaintiff

s/ Lauren S. Moore

LAUREN S. MOORE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0333
Fax: (202) 514-8640

Attorneys for Defendant

NOVEMBER 8, 2007

CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on NOVEMBER 8, 2007, a copy of "JOINT STIPULATION OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system, and that the parties may access this filing through the Court's system.

/s/ Lauren S. Moore